seated the clerk will call the next case mr. Hamill Good afternoon, your honors. I'm Judge Hamill. I represent the defendant Appalachian Nicholas Sheley. I please the court, counsel. Your honors, there are two issues in this case, but they break down to the same question. And that question is whether under the circumstances of this case, when the potential jurors told the judge that they could ignore the evidence that they had heard or the information they had heard from the media and could decide this case impartially based on the evidence at trial, where the judge could take those assurances at face value and could see those jurors as impartial jurors. What should the judge do? I'm sorry? What further inquiry should the judge make? Well, the question is whether he could see the jury at all under these circumstances. Because while the general rule is if a juror can assure the judge that they are impartial, that the judge can accept that, and if he can find 12 jurors who can make that assurance, then he can see the jury and you don't need to change the venue and you don't need to dismiss jurors for cause. However, there is an exception to the rule, and that exception is outlined in People v. Taylor, where under the unique circumstances of that case, even though the 12 jurors in that case told the judge that they could be impartial, the judge nevertheless, according to the Supreme Court, was unable to accept those assurances and instead had to change the venue. Why? I'm sorry? Why? Well, because under the circumstances of that case, the media coverage of that case was so pervasive and involved presidential and inadmissible evidence that it was, according to the Supreme Court, it was impossible for a juror to put that out of his mind and be impartial. And even though the Supreme Court held that the jurors were no doubt being sincere when they made that assurance, it was an assurance that nobody could really make. Did they give us some ruler as to what the level of that coverage has to be? Well, what they did... You know, measurement or... Well, pervasive. Saturation indexes, surveys, things of that nature. In Taylor... Well, no, not a hard, bright rule, but pervasive was the word, I think, that the Supreme Court used. No guidance as to what pervasive means. Well, yeah, I think there is some guidance in the opinion. And what's present in the opinion is really a perfect storm of factors. There's four different factors in this that were in Taylor that made that case very unusual. For one, it was pervasive media coverage. It was everywhere in that county. The vast majority of the potential jurors had heard of the case because of the media coverage. And then secondly, that the media coverage covered facts that had been deemed by the judge to be inadmissible because they were too highly prejudicial. And that was the lie detector test the co-defendant took. So it was not only was it pervasive, but it was dealing with stuff that the jury was not going to hear and because the judge felt it was too prejudicial. And then thirdly, in Taylor, the defense counsel used every one of his preemptory challenges in an attempt to keep jurors off of the jury who had heard about the lie detector test. And then fourthly, after the defense counsel ran out of preemptory challenges, there were then six jurors seated who had heard about the lie detector test. Were they challenged for cause? I believe that they were. They were challenged for cause and the challenges were denied. Although they had assured the judge that they could put it out of their mind. So under those circumstances, which are very unusual circumstances, the Supreme Court carved this limited exception to the rule. What did the trial judge do in Taylor? What did the trial judge do in Taylor? Well, he seated the jury. But don't you, I mean, isn't there a difference with Taylor than your case in that there was that the whole issue of the polygraph had been in the papers. That was never going to be admissible. But here you don't have that type of publicity about an issue that is never going to be before these jurors, right? Oh, but you do. You do. In this case you have six murders that the defendant was alleged to have committed that the jury was not going to hear about. Because the judge had found that even though those six murders were probative on issues in the case, they were relevant to the defendant's course of conduct and to the course of investigation, why certain evidence was found in certain locations. Despite that probative value, the judge held that the evidence of those six murders was so prejudicial that it outweighed it and made it inadmissible. So there was actually, going on to the second prong of Taylor, this media coverage was covering facts that were not going to go in front of the jury because they were too prejudicial. But when you look at Taylor, it's easier to see the scope of its rule when you look at the subsequent cases that distinguished it. And there's five Supreme Court cases that are discussed in the briefs. And you can see when looking at all five of them, all five of them are missing one of these factors from Taylor. You have Kirchner was one that's discussed at length in the brief, where defense counsel in that case only used five out of 14 peremptory challenges. So there were still things that he could do in the trial court to get a better jury if he felt that there were biased jurors on there. Sanchez is another case that's, I think, important because on the surface, it looks a lot like this case, where there was publicity about the fact that the defendant was charged with a murder in Wisconsin, which was going to be inadmissible in that case. However, look at Sanchez. Ten of the jurors that were selected had never heard of the case, and the two that had heard of the case didn't hear about the Wisconsin case. So none of the jurors that were seated in that case had knowledge of inadmissible facts. And if you go through all five of the cases... What do you mean, didn't care about the Wisconsin? What do you mean by that? I'm sorry? Didn't care about the Wisconsin? Hadn't heard about it. Oh, I'm sorry. I must have missed it. Hadn't heard of it. Hadn't heard of the Wisconsin case. So in that case, in every one of the five cases, there's one of these four factors or more from Taylor that is missing, and that's why the Supreme Court distinguished Taylor. But in this case, all four factors are here, which makes this a very rare case, one that's just like Taylor, where the media coverage was obviously pervasive. There are 389 articles in this record, and that's not a complete sample because most of the articles that were written during the actual murder spree didn't make it into the record. But we know they were there, and a few did make it. And on the second point, the second factor, as I said, the publicity constantly referenced that this was a spree and that there were these six other murders. Of the 389, 360 of them either at a minimum referred to Mr. Scheele as a life spree killer or had a sentence, and they're clarifying that Mr. Scheele was accused of eight murders in Illinois and in Missouri. And beyond that, that was the reason that these articles existed. There was coverage of this case at every single court hearing, every benign status hearing where nothing happened. There were still articles, and those articles referred to him as alleged spree killer Nicholas Scheele, sometimes even when there weren't court hearings in this case. When there were articles written about... So now what are you going to? You're using up your time on repeating the same thing. What factor are you on? Well, this is the second factor, first and second factor, which is that it's pervasive publicity and that it covered highly prejudicial evidence that was not admissible. But then moving to the third factor, the defense counsel used all of his primary challenges in this case. In six of the seven he used on jurors that he had challenged for cause on grounds that they had heard about these six inadmissible murders and these challenges were denied. So we have that in common with Taylor. And then finally, the fourth factor, just like in Taylor, after counsel ran out of challenges, jurors were actually seated who had heard about these six other murders. So there were jurors actually on the jury who knew about this inadmissible fact that the defendant was the alleged spree killer Nicholas Sheely. But they were questioned. They were questioned. As were the jurors in Taylor. But isn't the difference between Taylor and the fact circumstance here that the polygraph is not ever going to be admissible? The evidence is going to be taking that. And in this circumstance with the prejudicial information about the crime spree, the judge used his discretion in determining that that was not going to be admissible. That he found that the prejudice outweighed its probative value. So it isn't that it's something that is just inadmissible. It's something that he decided was going to be inadmissible, that he had some discretion there. I don't believe that that is a really meaningful distinction because for a couple reasons. First of all, if you look at Taylor, Taylor relies on the United States Supreme Court case, Marshall v. United States. Marshall v. United States doesn't involve polygraph evidence. It involves just highly prejudicial evidence just like this case. So in Taylor, the Supreme Court in Taylor said that case presented precisely the same situation that was presented in Taylor. So I don't think the Supreme Court was at least thinking of when they wrote Taylor that this is the only limited polygraph evidence. Secondly, when you look at the cases that distinguish from Taylor, the Supreme Court, not one of those cases involved polygraph evidence and not one of those cases did the Supreme Court distinguish on that ground. And ultimately, really, the question is was it prejudicial and put a juror put it out of their head or put it out of their mind while they're trying to decide the case. And polygraph evidence just is not the only kind of evidence out there that could be that prejudicial. And I would submit that six murders, particularly murders that were random in the community, that is something that a juror can't put out of their head. And, in fact, that's what the judge found when the judge deemed this inadmissible. He said if a juror hears that evidence, he's likely to say, end the inquiry right there. That was what the judge found about this evidence. So if that's the case, hearing it in court would cause a juror to do that. Having at least three of these jurors who knew about that from the beginning, I think the prejudice is obvious. Except for the fact that a judge instructs a juror that they're limited to only the evidence that's presented in a certain time and place at the trial. Correct? Correct. Yes. Okay. And so if that evidence isn't introduced presumptively, they can't consider that in their verdict, can they? True. But, again, that would be the case in Taylor, too. And in Taylor they said the Supreme Court found this exception exists where it was just too much. So that would be the case, I think, that would be the case in this case as well, where it's just something that they really can't put out of their heads. You know, the fact that this is Nicholas Healy and that they know about these cases. Finally, just to clarify the two issues, because they do break down this one question, but there were 61 jurors questioned in voir dire. They did find nine of them who didn't profess knowledge of the other six murders. Theoretically, I suppose, if the judge had kept going long enough, he might have been able to find 12 that didn't. He did not exhaust the judge. Well, he didn't exhaust the county. The county, but how about the... I don't recall if there was anybody left in that particular... I believe that they had actually exhausted a panel and brought in another one. They could have. In theory, they could have gone on forever. However, the only way they could do that is if the judge granted challenges for cause against the jurors who were biased by this information or who knew about this information. So what would end up happening in this case, and what would happen in any case where the judge denies the challenge of cause, the defense counsel eventually runs out of peremptory challenges and you end up with jurors who have this knowledge on the jury? Thank you. You know, the standard review is abuse of discretion in this case. And the Taylor case is from 1984, and of course our media coverage is very different today than it was in 1984, but Taylor still stands as presidential law, obviously. But here, we also have the judge instructing the jury pursuant to Supreme Court rule, what we used to call the Zare questions, and telling them, similar to what Justice Holdrege asked about, instructing them, they can't do this, they should do this, they have to consider this, do they agree with these principles, and so forth. And you've got the judge who was sitting there, and the judge denied the motion after being aware of all this. And what you're saying is this becomes so egregious that it's an abuse of discretion, is what you're arguing, right? That's correct. But what does that say at any time? Does it somehow become like a per se rule then? Any time there's a real horrible event in the community and several multiple murders, does that become a requirement that, no, you can't try it in this jurisdiction, you're going to have to go someplace else to try it, because somebody could have heard it. And there's a lot of media today, a lot of people are reading newspapers, they could be on who knows what in the cloud, hearing information. But they're asked about that. I know the jury instruction is dealing with an IPI criminal cover, they can't go outside the sources and so forth, and they can only consider evidence in the courtroom. They say they're going to follow that. So does that go into the consideration of abuse of discretion? Well, it does. And it does, although I think, obviously, they set that in Taylor. So the question really is, is this such a narrow case? If you ask if it's a per se rule, I wouldn't say it's a per se rule, except maybe it's a per se rule in this very, very narrow set of circumstances. Like if the crimes are so bad or if it's so horrible. Right, but you have to have all of it. It has to be that bad. It has to be that widely reported. I think it's fair to say that under Taylor it has to involve inadmissible evidence. You have to have the defense counsel using up its peremptories, and you have to end up with jurors on the jury anyway. It has to be all of it. And it's a very rare circumstance, and it's not something that's going to come up. You look at these five cases, the Supreme Court cases, Coleman and Kirchner and all those, it didn't come up in those, even though those were all horrible cases. And that shocked and outraged the community. It still didn't come up in those cases. But in this case it did. And this may be the one case where it happens. So what you're saying, this is a duplicate of Taylor on those four factors. It is. And I think if Taylor's going to apply anywhere, it has to apply here. And I'll say one more thing about the question about the per se rule. I think if you ruled against me in this case, if you ruled that this is okay, then you've created a per se rule that any time a juror says they're okay, that they can put it out of their mind, then it's good. I don't know how you could possibly get a change of venue if you can't get one in this case, because this is about it as pervasive, about it as prejudicial, and about it as- Well, okay. So one of your issues on the field is denial of a change of venue. It is. The first one is. And then also, if not the change of venue, then at minimum grant motions for cause for these jurors who knew about the six murders, which both lead to the same conclusion that the defendant had a partial jury and should have a new trial. And unless Your Honors have any further questions, I would ask that you reverse defense convictions and remand for a new trial. Thank you, Mr. Hamel. Mr. Fisher? Good afternoon, Your Honors. Please, the Court Assistant Attorney General Garson Fisher for the people. Your Honor, I'll start with your question you asked regarding Taylor, which does create an exception to the general rule that we defer to a judge's determination that potential jurors have credibly testified that they can be fair and impartial.  There are no four factors that we can look to in every case. Those are all relevant facts in Taylor and, in some cases, in some of the other Supreme Court cases where they found that a jury was fair and impartial. But what the Court says to do is to take a review of the record in its entirety, including voir dire, and determine whether the defendant received a trial in front of a fair and impartial jury. And in this case, the defendant undoubtedly did when the record is reviewed. You asked what else a judge could do besides take a juror at face value. In this case, the judge conducted extensive voir dire, including specifically regarding the pretrial media. He didn't treat the words, I can be fair, I can be impartial. I haven't prejudged it as magic words. He questioned the potential jurors extensively about that. And each of the 12 jurors testified repeatedly that whatever information they had from pretrial media, they could put it out of mind and decide the case based solely on the evidence that used at trial, and each testified repeatedly that they had not prejudged defendant's guilt or innocence in any way. It is true that most of the jurors were familiar with the defendant's case from pretrial media, but both the Illinois and U.S. Supreme Courts have been clear that ignorance of a case is not required prior to trial in order to be fair and impartial. Well, but he's saying, the opposing counsel is saying, that this is like an objective test, really, okay? It's not subjective. Can I set this aside, what I know, and can I be fair and impartial and restrict my verdict to only that which the evidence will support, or the evidence support my verdict, okay? But aren't they saying in Taylor that there's an objective kind of like that goes beyond that? It's just like unbelievable, so to speak, or do we have to get to that level, that it's unbelievable that anybody could set that type of coverage aside so we can't really accept their subjective statements? Your Honor, I think in Taylor, that is a fair assessment of what, in Taylor, a review of that specific record, the court found that to be the case. I think there are two sort of components of the coverage to break up, the quantity and the quality of the coverage. Defendant makes a lot of, especially in the briefs, about the sheer volume of the coverage in this case, the allegedly unprecedented volume of coverage in this case. But, for example, in People v. Sutherland, the record in that case indicated that 90% of potential jurors were familiar with the case, and the court found that the jury in that case was fair and impartial. And in Taylor, the court is clear that that sheer volume of coverage is not what's dispositive as to whether we should set aside the usual deference. You had three jurors on this group that knew about the other murders. There were three jurors who were aware of at least some other crimes' evidence It's worth noting, I think, that the judge in this case had determined that evidence of the Russell Weed murder, which occurred prior to the Ronald Randall murder, was admissible, and two of the jurors don't indicate any familiarity with defendant's alleged participation in other crimes that would go beyond awareness even of that murder alone. There's only one juror, Juror Krause, who is, based on voir dire testimony, is aware of the six subsequent murders. But didn't the judge, with that juror and those other two jurors, didn't the judge make further inquiry during the voir dire? Absolutely, Your Honor. And when he voir dired Juror Krause about whether he had in any way prejudged defendant's guilt based on his familiarity with the six subsequent murders, Krause responded, no, I do not know the facts. Whatever is in print or what's on TV is not always true. So in addition to saying generally that he could set aside this information and decide the case based solely on the evidence used at trial, he was pressed on this issue by the parties and by the court and testified repeatedly and clearly that the mere allegation in the media that defendant was involved in these subsequent murders did not prejudice him towards a finding of guilt in this murder. Which brings us back to the fundamental difference in the type of information that was conveyed by pretrial media in Taylor versus this case, and also Your Honor's question about the difference between polygraph evidence and other crimes evidence. The evidence in Taylor created a direct inference of the defendant's guilt in that case. Two suspects were brought into custody. They were both administered, or excuse me, the information conveyed in pretrial media in Taylor. They were both administered polygraph tests. One passed the test and was released. The other became the defendant in the case. That creates a direct inference that if one suspect passed the polygraph test and was released, the remaining suspect did not pass his polygraph test and must be guilty of the crime. This evidence is particularly problematic because of the uniquely troublesome nature of polygraph evidence. It's pseudoscientific. It's given undue influence by jurors, and that's especially troublesome because it's not inherently particularly reliable, which is why the Illinois Supreme Court has said that it is never admissible in a criminal trial. Other crimes evidence is different. It often is admissible. The evidence of the Russell Reed murder would have been admissible in this case, and the judge was clear that... That's not being challenged on appeal. That is not being challenged on appeal. And the court was clear in this case that if there had been some contention as to the validity of the physical evidence collected at the crime scenes of the subsequent murders, that he would have allowed evidence regarding the defendant's alleged involvement in those subsequent murders to come in in this case. So there is an inherent difference between other crimes evidence generally and polygraph evidence, and the difference between the other crimes evidence in this case and polygraph evidence. In fact, the inference of defendant's guilt to be drawn from his alleged involvement in other murders is no greater than the inference that a juror could draw from the fact that he has been charged with this murder. And we generally allow judges or show deference to judges' determinations that a juror has credibly testified that they can treat a defendant fairly and impartially. There's nothing about the nature of the pretrial media in this case that should cause this court to set that deference aside. Your opponent is arguing, and if I sort of follow up on one of Justice Holdridge's questions about the objective standard in this case, if it's objective, the opponent's argument is sort of that this case, if you don't have a situation in this case that's following Taylor, when would you ever have a Taylor problem? In this day and age where you've got a Supreme Court rule that requires more extensive voir dire examination, I know the distinction you're making between the types of evidence, the polygraph versus the other kinds of evidence, but when would you ever have a situation then, given the nature of our present media and given the nature of our present rules, where Taylor would be followed? He's sort of suggesting it doesn't follow the smell test. I think, Your Honor, that we can create a closer case where there might be an issue. If you had a case where multiple jurors were aware of, for example, evidence that a defendant had given a confession that was subsequently found to be coerced and not admissible, that that kind of information being conveyed through Is this something related to something coming from, somehow directly or indirectly from the defendant himself? It's something like a confession that was subsequently excluded because it was not found to be reliable, or, I mean, obviously the polygraph evidence is the direct example, and Taylor, six of the 12 jurors being aware of polygraph evidence, but these are examples, these close cases are examples where the evidence is particularly problematic and creates a direct inference that the defendant is guilty of this crime, as opposed to other crimes evidence, which, while certainly not admissible for propensity purposes, often has appropriate non-propensity relevance to a case, and in this case didn't create any stronger inference of the defendant's guilt than the usual inference that could be drawn from the defendant's arrest and indictment on a crime. So, you know, there are still potentially hard cases. I think this is actually an easy one to see from reviewing the record as a whole. You're suggesting there's cases where the defendant is implicated by his or her own words or actions, or they find a gun, for example, in their apartment or something. There's something that implicates the defendant. And is then an admissible. That might be, that would be a closer case. I can't draw a conclusion about whether it would be. Okay, so your best one is other crimes evidence and the kind of murky area of admissibility of other crimes evidence? Well, that is, I think that is relevant to the fact that there is nothing about, based on a review of the record as a whole, there's nothing about the pretrial publicity in this case that would cause the court to set aside the usual rule that we show deference to a court's determination, following Verdier, and especially in the case where there's extensive Verdier like this, that a juror has credibly testified that they can be fair and impartial. It is also relevant that only one of the 12 jurors had any, had any awareness based on the record of the subsequent murders. And he was pressed on that issue and testified extensively about his ability to set that information aside. And that generally, while many of the jurors were familiar with pretrial publicity, their familiarity is typified by the testimony of one juror that she could, quote, recall hearing something a few years ago, but it was vague. There is this general awareness because of the extensive pretrial media of this case before trial, but very few, only one of the jurors retained any remembrance of specific information about defendants alleged to have crime spree from that pretrial media. And he has argued extensively about his ability to set that information aside. That's juror Crouch, Your Honor. What's the basic rationale for keeping other crimes evidence out? Well, there's generally a concern that if a defendant has committed a crime like this in the past, short of MO evidence, obviously, but that if a defendant has committed a crime like this in the past, it is more likely that he is guilty of this crime, and therefore, a juror would improperly draw the propensity conclusion that the defendant is guilty of this crime because he's committed crimes in the past. And doesn't that underscore your opponent's argument that when you consider that factor, that policy judgment, and all the media coverage they had about everything else, that's what makes this a tailored case? I don't think so in this case, Your Honor, for a couple of reasons. First, there's the fact that only juror Crouch was aware of specific information regarding the subsequent murders that were deemed inadmissible in this case because of their potentially prejudicial, improperly prejudicial value. Second is the fact that... Wait a minute. Can you have one bad apple in a barrel? What does it do? You're saying only one juror? It is not dispositive that it's only one juror. I mean, it thinks that the fact that jury errors are errors in jury selection are generally structural. We understand that a single biased juror is enough. Our argument is not that because it's one, we win. It sounded like that. But I think the question here is, again, reviewing this entire record, do we know that the juror or defer to the trial court's judgment that it had selected 12 impartial, unbiased jurors? Yes. And in looking at that, there's one juror in particular that we need to focus on. This is not a case where six jurors were aware of the inadmissible evidence or information regarding evidence that would not be admitted at trial, and therefore we need to make sure that each and every one of those has been... Well, it wasn't six. It was three. Well, it's three who are aware of some vague information that there may be other crimes, but of course, again, some of the other crimes' evidence was deemed admissible. The state chose not to admit evidence of defendants' alleged involvement in the Russell Reed murder, but the judge actually held that for motive purposes and identity purposes, that that evidence would be admissible at trial. Yeah, well, the state never admits evidence. Excuse me. Yes, excuse me. The state did not introduce evidence of Russell Reed murder. Thank you. But I think in this case... You see the concern, I think, that Justice Carter is bringing up with this other crimes' evidence. I mean, this propensity argument that it's a landmined area. You've got to be very careful. I agree, Your Honor. I think Juror Krause's testimony of Vardir highlights the difference between being exposed to information that a defendant is suspected of committing other crimes through pretrial media versus hearing evidence of other crimes at trial when he testifies that whatever's in print or what's on TV is not always true. He was not treating, and it's clear from the Vardir, not just from saying the magic words, I can be fair and impartial, but from his extensive Vardir, it's clear that he's not treating the information from pretrial media of defendants' alleged involvement in these subsequent crimes as if it were evidence that were introduced at trial proving defendants' involvement in other crimes. And the Vardir of Juror Krause is representative of the level of Vardir that was conducted consistently in this case. And the trial court determined, based on that extensive questioning, that each of the jurors had credibly testified that he or she could set aside that information that they had received through pretrial media and decide the case based solely on the evidence due to the trial. That's an interesting question. Standard of review. He's judging the credibility. What do we usually use as a standard of review for determining whether that decision was appropriate or not? I think, Your Honor, someone on the panel earlier put it in a way that I think is informative. It is an abuse of discretion standard because the court did make credibility determinations about the veneer members and jurors' testimony that they could be fair and impartial. Normally, isn't that a manifest way of evidence review? Yes, Your Honor. We keep saying abuse of discretion. He or she did or did not abuse their discretion. Yes, Your Honor. No rational person would have done what they did or failed to do. I do think that the exception for Taylor sets up the court to conduct a review of the record to see if this meets essentially an exception to that usual standard. And on that level, the court is conducting a different level of review, perhaps a no-vote review, as to whether this case is an exception to the usual abuse of discretion or against the manifest way to be evidence standard that applies to the determination of the credibility of the witnesses. But there's nothing about this specific pretrial media in this case that would require the court to dispense with that usual deference that it would give to that determination because it is substantively different than the kind of information that was in the pretrial media in Taylor. Unless the court has any further questions, for these reasons and those stated in our brief, we would ask that the court affirm the judgment of the Circuit Court of Montgomery County. Thank you, Your Honor. Thank you, Mr. Fisher. Mr. Hamill? Thank you, Your Honor. Well, starting with Yan, the abuse of discretion standard, I would look at Taylor. The court in Taylor actually found that the jurors were being sincere when they assured the trial judge that they could be fair. So ultimately, I don't know if this is a credibility determination so much as it's just a determination that under these circumstances, it's just not possible. And even though the jurors are going to try their hardest and they think they can do it, just no person can under the circumstances. So no reasonable person can come to that conclusion the trial judge came to. Correct. Because under the circumstances, yeah. You're both suggesting this is very fact-intensive, this review. It is. Absolutely. It absolutely is. And on that, first of all, the distinction that the state draws, the distinction that the trial judge drew between polygraph evidence and everything else is not a distinction that was ever drawn by the Supreme Court or any other reviewing court. And I would remind the court that in Marshall versus the United States case that Taylor relies on, it wasn't polygraph evidence and it wasn't this kind of evidence that went to directly to the defense guild that actually was other crimes evidence. But don't they, in Taylor, don't they say that polygraph is a peculiarly persuasive material? I mean, is that? They certainly do. And they spend a lot of time talking about how prejudicial polygraph evidence is. What I'm saying is they're not saying that to the exclusion of other kinds of evidence being that prejudicial. It's just they obviously wanted to make sure that, you know, convey that this is a rare, you know, it takes a lot of very prejudicial evidence. And they were making the point that that was the case in that case. But I don't think you can say, especially when you rely on a case that doesn't have polygraph evidence in it, that that's what they're saying, that it is to the exclusion of other kinds of evidence. And I would also disagree with the state's position on this particular kind of other crimes evidence that's present in this case. I mean, the state should treat this as just normal propensity evidence that, well, Nicholas Shealy committed a murder at one time and maybe did it this time. This is a little different because this is course of conduct evidence. This was, you know, this was this eight-day spree. That one, you know, one murder led to the next, led to the next, led to the next. So this is a situation where if he's the guy who committed the six murders in Rock Falls or the four murders in Rock Falls, he's also probably the guy who committed the murder in Galesburg. So it does, you know, it does have a prejudicial effect beyond just propensity in this case. And, you know, finally, just the point that I said a couple times. How do you define prejudicial effect beyond propensity? Because you just gave me an argument for propensity. If he's been charged with this, he probably did this. Well, I mean, but these specific crimes are tied together. Okay. So it's more, of course, a conduct also, you know, or the alternative. Sometimes other kinds of evidence is brought in to prove identity as opposed to, you know, just digging here. There's a case. I know there's a case where a defendant is convicted of, you know, accused of murder and accused of stealing a gun a few weeks before. And he's allowed to bring in that he stole the gun because the gun was used in the murder and tied him together. That kind of evidence is different. It's a little different from propensity. It's a little more relevant. It goes a little bit more toward, you know, proving that this defendant did this. It all goes towards propensity for the crime that he's charged and under trial for. I think that's splitting a lot of hairs. But generally, the general public would use it as propensity. Well, yeah. Ultimately, propensity is the big problem here. But I was saying this might be. That's why you wanted in. Sure. But it's also. But it also does. You know, you had this situation. One guy did all this. So, you know, if he did this, he did that. And then the conclusion is you must have done the one in the middle. And remember how this is presented. If you look at the, you know, that front page article in the local paper that was made in an exhibit where, you know, the entire, both the full spread and they had the timeline going across the top. You know, we killed this person here. We killed this person here. These four people here. Which paper was it in? I believe it. The local. Galesburg. It's in the record. It's exhibit B or something. But, you know, that's how it's always presented. It's just, you know, spree. And that's what he keeps being referred to in the media as a spree killer. So it is all tied together. It's not like he committed a murder in 1986. And now he must have done it because he's, you know, a murder from way back. Thank you. And I would just conclude with what I've been saying. It takes a rare case. It takes a very unusual case. None have come up since Taylor. But this is that case. And if this isn't that case, then that case is never going to come. And unless your honors have any further questions, I would ask that you reverse the fines and convictions and remand for a new trial. Thank you. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement. A written decision will be issued as soon as possible. And right now we're going to stand in recess for a short panel change.